STORIE *v.* TAYLOR SUPPLY CO. *et al.*

(*Nashville*, December Term, 1949.)

Opinion filed March 17, 1950.

BURT FRANCIS, of Nashville, for complainant (appellee.)

BAILEY, POWELL & DAVIS, of Nashville, for defendants (appellants.)

MR. JUSTICE BURNETT delivered the opinion of the Court.

This is a Workmen's Compensation case.

William M. Storie, deceased, husband of the appellee, worked as a traveling salesman for the appellant, Taylor Supply Company. On March 31, 1947, in line with his duty he drove his automobile to Gallatin, Tennessee, and surrounding territories on the business of his master. It is rather clear from the record that he did not finish his business there until rather late on that afternoon (seeing one of his customers after closing time in the store) and then while driving back to Nashville, where he lived, his car went out of control and turned over some two or three times, rather severely injuring Storie. He either got a taxicab or someone else got one for him and drove him to a local hospital in Nashville. His sister was notified that night about 10:00 o'clock that he was in the hospital. She in turn got in touch with his wife who for the first time learned of his accident about 11:00 o'clock on the night of March 31, 1947. In the meantime she had become rather worried because he had not arrived home, as he was supposed to be there for dinner with guests,

and she had called the president of the company for which he worked. Mr. Storie was X-rayed and examined rather thoroughly at the hospital and no fractured bones could be found. He was bruised up considerably and had a large knot over one of his eyes. The doctor who saw him that night and subsequently discharged him the following day said that he was apparently rational and normal. Some of his relatives who saw him at the hospital say that he was not rational. He was discharged from the hospital the following day and went home where within a very short time, a space of 48 to 60 hours, he apparently went insane, having ideas of grandeur. He piled all of his personal property on the floor saying that he was going to have an auction and get wealthy from this auction. As a result of this condition his wife contacted another hospital and had him examined there but they were not able to take care of patients in his condition. As a result of this an effort was made to get him into some sanitarium or place where an insane person could be properly cared for. They were unable to immediately find such a place. Storie was placed in jail overnight. The following day the president of the company for which he worked was able to get him committed to the Davidson County Hospital where he stayed for some two weeks when he died. Apparently the man never gained his normal functions after he was placed in this institution

At the time of the trial no witness could be found who saw the wreck or knew anything about it. The facts concerning the wreck had to be largely proved by what the president of the defendant company had discovered by investigation or had been told by Mr. Storie about the wreck. The president of this company though was apparently well convinced that this man had received his

injuries from a wreck. The record is very positive that Storie did not drink or have any habits of the kind which might have produced a wreck. The wreck was apparently caused by a blow-out or something of the kind causing the car to turn over two or three times.

The Chancellor after very carefully listening to the witnesses testify, and the arguments pro and con by respective counsel, concluded that Mr. Storie's death resulted from an aggravation of a preexisting disease by the accidental injury he received in the automobile accident while on the mission of his employer. He, therefore, entered a decree in favor of the widow for the full amount of the statutory allowance for such a death, the wages of the employee being sufficient to bring the amount up to the maximum allowed by the statute. The defendant (appellant here) seasonably filed a motion for new trial which was overruled and the case appealed to this Court. We have very carefully studied this record and the authorities cited in the briefs in support of the respective positions of the parties in arriving at our conclusions to be hereinafter set out.

As presented to us, the only serious insistence made by the appellant is ''that the death of the said William M. Storie, deceased, was not caused by the injuries received in the alleged automobile accident but by the cause stated in the death certificate, convulsions of syphilis, due to the general paralysis of the insane, and that, therefore, the Appellee is not entitled to any recovery against the Defendants under the provisions of the Workmen's Compensation Statutes of the State of Tennessee.''

Obviously our consideration of this question must be controlled by certain rules which we set forth in *Swift & Co.* v. *Howard*, 186 Tenn. 584 at 588, 589, 212 S. W.

(2d) 388, 390, as follows: "This argument and the assignment based thereon obviously largely assail the determination of the preponderance of the evidence by the trial judge. 'The preponderance of the evidence is not an open question in this Court, which is bound by the finding of the trial judge in that regard, if there was any material evidence to support it.' *Anderson* v. *Volz Const. Co.*, 183 Tenn. 169, 175, 191 S. W. (2d) 436, 438. We do not reweigh the evidence nor do we attempt to see where the preponderance lies. The preponderance of the evidence might be against the finding of the trial judge yet if there is material evidence to support his finding we must affirm this score. *Vester Gas Range & Mfg. Co.* v. *Leonard,* 148 Tenn. 665, 257 S. W. 395. 'The weight of evidence and the credibility of the witness are finally determined in the trial court.' *Anderson* v. *Volz, etc.*, supra. We must also remember that 'circumstantial evidence may support a finding of fact or an award in workmen's compensation proceeding, and a finding or award may be based on inference drawn from circumstantial evidence.' 2nd Head note, *Riley* v. *Knoxville Iron Co.*, 178 Tenn. 107, 156 S. W. (2d) 398."

We gather from this record that the deceased was a high class Christian gentleman and a salesman of no mean ability. He was a close personal, church and lodge friend of his employer. Due to his past reputation as a salesman and to friendship, the employer sought out and procured his services. The deceased had sold various and sundry things over many Southern and Southwestern States and had met with much success in his profession. Some three or four years before the accident complained of herein the deceased had been on two different occasions, to Mayo's Clinic where he had

been treated for a syphilitic condition. He had also been treated for the same condition at a clinic in Texas. The record though shows that for three or four years prior to the accident the deceased was apparently in excellent health and syphilis had not been transmitted to his wife with whom he had lived for some eleven years prior to the accident herein. After the accident, when he was admitted to the hospital, a blood test was taken and he was shown to have had a two plus Kahn, which according to one of the defendant's doctors, might be considered a mild form of syphilis. According to this doctor if one had had a four-plus and the doctor had been able to reduce it to a two plus he would have considered the man healing rapidly and on the road to recovery. There is no medical testimony that as a positive fact the accidental injury did aggravate this syphilitic condition to such an extent that it, this aggravation, caused the death. One of the doctors for the defendant says, ''I don't think it killed him'', speaking of the accident. This same doctor is then asked a rather long hypothetical question by the Court (the question stating the evidential facts that had been shown the court prior thereto) and he answered: ''I think if I had that information I would think that it was perfectly possible it might have contributed to it.'' In other words this doctor says that the accidental injury might have contributed to the death of this man, in the physical condition he was in. This doctor concludes that he does not think that the injury contributed to or aggravated the disease.

On this testimony of the defendant's doctor along with the evidence that the deceased had been apparently a healthy, normal man for some two or three years prior to the accident, up to and including the day

of the accident, and then almost immediately following the accident this insane condition had developed from which he died, the trial judge concluded that the injury aggravated this preexisting syphilitic disorder to such an extent that death resulted therefrom. Clearly this constitutes material evidence from which the trial judge would be warranted in the finding that he made. Obviously the trial judge was also entitled to certain inferences from the proven facts herein. As has been said so many times, we cannot and must not re-evaluate this evidence and reweigh it. Our only function is to see whether or not there was material evidence from which the trial judge could have reached the conclusion which he did. There being sufficient evidence upon which to base this conclusion, there is nothing that we, an appellate court, can do about the matter.

We said in *Swift & Co.* v. *Howard*, supra, that the employer takes the workman as he finds him and "assumes the risk of having a weakened condition aggravated by some injury which might not hurt or bother a perfectly normal, healthy person." And we further said that if the injury "excites and aggravates a previous weakened condition then the employer is liable."

For the reasons stated above we are constrained to affirm the decree of the Chancellor. It is therefore affirmed with costs against the appellant.

All concur.