BOYD *et al. v.* YOUNG.

(*Knoxville,* September Term, 1951)

Opinion filed December 14, 1951.

Petition to Rehear December 22, 1951.

Petition to Rehear denied February 9, 1952.

E. LYNN MINTER, of Kingsport, for plaintiffs in error.

E. RAY HAUK, of Kingsport, for defendant in error.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This is a suit by Mrs. Gertrude Young to recover workmen's compensation for the death of her husband, Woodrow Young.

The original petition was filed by Woodrow Young and upon his death his widow became a party plaintiff adopting all the averments in the original petition and adding thereto the further averment that she was entitled to recover for the reasonable funeral and burial expenses not exceeding the maximum amount allowed by law. The original petition alleges the following: "The original petition of Woodrow Young is that petitioner, while in the course of his employment, reached down and picked up a box of cheese weighing about forty (40) pounds; that as he came up he suddenly felt something snap or pop in his upper back and felt a sharp pain; that he was taken to the hospital by the manager of plaintiffs' store and X-rayed; that petitioner shortly thereafter went

home and stayed in bed for a day or two but that he continued to suffer in his upper back; that two days after the occurrence petitioner returned to work and tried to work but continued to suffer pain; that petitioner continued to work for several weeks but was uncomfortable and could not sleep or rest properly at night; that about the middle of March, 1951, petitioner was sent to Knoxville, Tennessee, to Dr. Earl Donathon and was operated upon by Dr. Donathon; that it was determined by Dr. Donathon that petitioner had a cancerous condition; that said alleged accidental injury either caused petitioner's disability or aggravated and accelerated a previous condition by reason of which petitioner was totally and permanently disabled and entitled to Workmen's Compensation benefits as provided by Law.

"On July 9, 1951, the amended petition was filed by the present petitioner, Mrs. Gertrude Young, in which it was alleged that the original petitioner, Woodrow Young, died on May 13, 1951, and that she and one child would be entitled to Compensation for the death of her husband. We think it should here be stated that in the original petition filed for the deceased it was also said, among other things, 'that said accidental injury either caused petitioner's disability or aggravated and accelerated a previous condition.' '' (The foregoing is copied from the defendant's brief, the same being a correct statement of the complaint.)

The specific defenses made are, as follows: "Plea of general issue was interposed and also that defendant did not prevail upon original petitioner to go anywhere and it was admitted that deceased died of a cancer or a cancerous condition, but it was denied that said condition was the result of an accidental injury and it was denied there was either a direct, proximate, or causal connection

between said alleged injury and succeeding death; and it was denied that any condition of the deceased was aggravated or accelerated."

The trial judge found the issues in favor of the petitioner as follows:

(1) "That the deceased, Young, died as a result of an accident which arose out of and in the course of his employment with the defendants.

(2) "That it was an accident is clear to me from the proof. He was reaching in a strained position, and was lifting a box of cheese. While in this position and lifting the cheese, it is apparent that he strained or twisted himself in such a way that it injured the tissues or muscles in his back at a point between his shoulders, for he immediately grasped the back of his neck and showed that he was suffering great pain, and from this point he became progressively worse until the time of his death. He had been in excellent health all of his life until this time. It was after the accident that he became ill, and it is significant that when he was operated on the cancer or tumor was found at the spot where he placed his hand at the base of his neck and cried out in pain.

(3) "The tumor or cancer may or may not have been present at the time of the accident or strain, but in either case, I find the accident or strain either caused the cancer or excited or accelerated it and thus brought on his death."

The defendant appealed and assigned the following errors:

1. "Because there is no competent, material evidence to support the judgment of the Court.

2. "Because the judgment is contrary to the law applicable to the case.

3. "Because the judgment of the Court is based upon conjecture and speculation.

4. "Because there is no proof to support the Court's finding that deceased may have had cancer at the time of the alleged accident, and there is no proof to support the Court's findings that if a cancer did exist it could have been aggravated because there was no proof that such condition did exist at the time of the alleged accident and, consequently, no competent proof of an aggravation of something the proof did not show to exist."

5. The court erred in refusing to grant defendants' motion for a directed verdict, etc.

We will refer to the parties as they appeared in the court below.

It is earnestly insisted by the defendants' counsel that there is no evidence to support the petitioner's theory that the deceased had a cancer, or was suffering from a cancerous condition of the spine, at the time of the alleged accident, and there could be no acceleration of a condition that did not exist; that there is no evidence that the act of the deceased in lifting the box of cheese caused the cancer, and for this reason there is no causal connection between the accident and the death of the deceased.

The foregoing is a clear and concise statement of defendants' case as against the petitioner's claim for compensation and for a reversal of the holding of the trial court.

We think there is material evidence to support the conclusion of the trial court, conceding that the medical experts were in agreement that no one knows the cause of cancer. We think it is reasonable to conclude that the deceased had a cancerous condition of the spine at the time of the accident, because at the time of the operation it was the size of a grapefruit and had spread

into the surrounding tissue and muscles of the neck and upper back. It is really unreasonable to think that this unnatural and unhealthy condition could have developed from the time of the accident to the time of the operation which was approximately four months.

The determinative issue is whether or not the lifting of the thirty (30) or forty (40) pound box of cheese by the deceased was such a strain upon the muscles which were connected, or nearly so, with the diseased tissues, i. e. the cancer, that it accelerated its growth and further development and was a contributing cause of his death. It is doubtless true that sooner or later the deceased would have died from the cancer, but the case is still compensable if the accident so accelerated or aggravated it that it was a contributing cause to the shortening of his life.

Able counsel for the defendants insists that there was no acceleration or aggravation, shortening, or any limitation of life, and that the conclusion of the trial judge is pure conjecture. It must be conceded that if the cause of death is a matter of speculation or conjecture, or if it is speculative to say that the accident accelerated and aggravated a prior physical disability which resulted in his death, the case is not a compensable one.

The testimony of Dr. Donathon, who appeared to be an able, experienced and conscientious medical man, was that the accident did not cause the cancer and that the operation lengthened the life of the deceased.

But there is credible evidence by other competent medical experts to the contrary, that is that the accident contributed to the death of Woodrow Young. The petitioner introduced four medical experts, Dr. L. C. Cox, Dr. H. O. Bolling, Dr. R. A. Steadman, and Dr. H. S. Burem. They were each asked a hypothetical question

which gave a full and adequate portrayal of the nature of the alleged accident, the immediate pain suffered thereafter, his inability to work, treatments that were administered, the final operation and its results, and his death following the operation. The question was concluded as follows: "Could such an injury, accompanied by the sudden and immediate pain thereafter, have contributed to this young man's death?"

Dr. Cox gave the following testimony:

"A. Yes, it could. The facts being as you stated them, probably the injury hastened his death.

"Q. If he had some prior weakness or condition or tendency there, and received the injury, could or not such an injury have aggravated and hastened this cancerous condition that caused his death? A. That is what I said, that it probably could have and probably did hasten the end of the man, by breaking down and spreading quicker than otherwise would have taken place. (Tr. pp. 88 and 89.)

"* * * We don't know the origin of cancer, the cause of it, what brings it on. We are still in the dark, but if we presuppose the cancer was there and an injury, although trivial, may spread the thing so he would die weeks or months later." (Tr. p. 91.)

Dr. Bolling performed an autopsy upon the body of the deceased. He testified, as follows:

"Q. My question is could or might have that occurrence have contributed to this boy's death? A. It certainly could have contributed to his death in hastening affairs along.

"Q. In hastening it along? A. Yes, sir.

* * * * * *

"A. This condition, this tumor, whether it was malignant or not none of us know, at the time he developed

this severe pain after the history of being bent over and all of that, I don't know, but certainly that could aggravate this condition and cause death a lot more rapidly than if it had never happened." (Tr. pp. 105 and 106.)

Dr. Steadman made the following answer to the question:

"A. The question is, do I think this would contribute to this condition, this injury he was supposed to have had?

"Q. That is right, could it or might it have contributed to his death in any way? A. I think it could definitely have aggravated any condition that was existing or might possibly have been a cause." (Tr. p. 118.)

Dr. Burem testified by deposition, as follows:

"Q. (Continuing—By Mr. Hauk) If this young man had some previous condition, weakness or infirmity in his cervical area, could or might such an injury have aggravated that condition or infirmity? A. Yes.

"Q. In your opinion did it aggravate some such condition in this young man? A. It is very possible and, in my opinion, I believe that it did.

"Q. Could or might such an injury have hastened this young man's death? A. Yes." (Tr. pp. 142 and 143.)

While the case at bar is based largely upon expert medical testimony, yet we think the evidence is sufficient to sustain the judgment. The finding of the trial court is not speculative or based upon conjecture. In *Benjamin F. Shaw Co.* v. *Musgrave,* 189 Tenn. 1, 222 S. W. (2d) 22, the final conclusion of the Court was based upon the testimony of medical experts. There are many cases to the effect that medical testimony in many cases is entitled to great weight in determining the nature and extent of an injury and its ultimate consequences. If the trial judge reaches a decision based upon the opinions of medical experts, as in the instant case, there is no reason

for this Court to disregard it as having no probative value. There is in the record the testimony of eye witnesses to the accident, and there can be no other reasonable conclusion than that from that moment there was continuing pain in the region of the back where the cancer was located and removed.

■ Our cases are too numerous to require citation holding that where an accident can be fairly said to be a contributing cause of death, it is compensable under the statute, even though the injured employee was suffering from some prior disability of a serious nature. *McCann Steel Co.* v. *Carney,* 192 Tenn. 94, 237 S. W. (2d) 942; *Tapp* v. *Tapp,* 192 Tenn. 1, 236 S. W. (2d) 977. The assignments of error are overruled and the judgment of the trial court is affirmed.

It appearing from the judgment of the trial court that the cause was retained upon the docket for the enforcement of the award, it is accordingly remanded for that purpose.

All concur.

## On Petition to Rehear.

Neil, Chief Justice.

The defendants have filed a petition to rehear renewing the contention that there is no evidence to support the plaintiff's theory that the deceased *had a cancer at the time of the alleged accident,* etc., and hence there could be no acceleration of a condition that did not exist.

In the petition to rehear counsel refers to an excerpt from the opinion, which is criticized on the ground that there is no evidence to sustain the conclusion. It reads, as follows: "We think it is reasonable to conclude that

the deceased had a cancerous condition of the spine at the time of the accident, because at the time of the operation it was the size of a grapefruit and had spread into the surrounding tissue and muscles of the neck and upper back. It is really unreasonable to think that this unnatural and unhealthy condition could have developed from the time of the accident to the time of the operation which was approximately four months.''

When this opinion was considered in conference a member of the Court suggested that this paragraph be elided. But a majority was of opinion that a reasonable construction of the language, considered in the light of other expressions in the opinion, was not in fact objectionable; that the opinion when taken as a whole conveyed the idea which the Court had in mind, that the deceased had a diseased condition, or an ''unnatural and unhealthy condition'', in the upper part of the spine at the time of the accident. It is doubtless true that the descriptive word, ''cancerous'', as used in the quoted paragraph was inappropriate when viewed from a strictly technical standpoint. But it does not follow that the final conclusion of the Court was incorrect.

The evidence shows conclusively that from the moment the deceased lifted the forty pound box of cheese, and felt the terrific pain in his spine, he was doomed. The medical proof, as pointed out and copied in the original opinion, sustained the plaintiff's theory that the accident contributed to the death of the deceased. We here quote the testimony of only one medical expert, Dr. Cox:

''Q. Could such an injury, accompanied by the sudden and immediate pain thereafter, have contributed to this young man's death? A. Yes, it could. The facts being as you stated them, probably the injury hastened his death.''

We respectfully refer the counsel to the full testimony of Dr. Cox and other medical experts referred to in the original opinion.

It is further insisted that the cases of *Benjamin F. Shaw Co.* v. *Musgrave,* 189 Tenn. 1, 222 S. W. (2d) 22, and *Tapp* v. *Tapp,* 192 Tenn. 1, 236 S. W. (2d) 977, are not applicable. We are convinced that the holding of the Court in these cases was controlling authority.

In *Storie* v. *Taylor Supply Co.,* 190 Tenn. 149, 228 S. W. (2d) 94, 97 (not referred to in the original opinion) it was held that "the employer takes the workman as he finds him and 'assumes the risk of having a weakened condition aggravated by some injury which might not hurt or bother a perfectly normal, healthy person' ", opinion by Mr. Justice BURNETT, citing *Swift and Co.* v. *Howard,* 186 Tenn. 584, 212 S. W. (2d) 388. To the same effect is *McCann Steel Co.* v. *Carney,* 192 Tenn. 94, 237 S. W. (2d) 942. In this case the prior unhealthy condition of the employee was "leukemia" or cancer of the blood. The immediate cause of death was "blood poisoning" which hastened Carney's death.

In addition to our own cases, herein cited in support of plaintiff's claim for compensation and that this conclusion is not based on "speculation", an interesting case from the Supreme Court of Minnesota, *Pittman* v. *Pillsbury Flour Mills,* 48 N. W. (2d) 735, 738, is directly in point. In this case the employee, Pittman, was struck on the nipple of the right breast by the body of an electric drill. Within two months a tumor was present in the same place and his breast had to be removed. About three years later he became disabled and soon after died of cancer of the lungs. In affirming the Industrial Commission's award of death benefits it was said by Chief Justice LORING, speaking for the Court: "In this case,

we have been presented with a rather elaborate discussion of medical theories as to the possibility of a cancer being caused or aggravated by trauma. It was conceded by all of the doctors who were witnesses that the medical profession has incomplete knowledge concerning the causes of cancer and the factors influencing its growth and spread in the human body. The theories which the profession has developed are in large part based upon empirical studies. Since we, as judges, lay no claim to expertness in these matters, we can add nothing to the discussion, nor can we be expected to resolve those conflicts which the medical profession itself has been unable to resolve. Notwithstanding this uncertainty, we think that we are bound to treat the opinions of these doctors as something more than speculation and conjecture, which are but polite terms for unscientific guesswork.''

For other recent cancer cases in which compensation was allowed see 4 NACCA Law Journal, 69-70, notes 325-327.

While counsel for the petitioners has presented his petition to rehear in a fine way we are constrained to disagree with him. The petition is accordingly denied.

All concur.