MAGGIE GLOVER BOWMAN, Appellant,

*v.*

SMITH-BUILT HOMES, INC. and Hartford Accident and
Indemnity Company, Appellee.

424 S.W.2d 801.

(*Knoxville*, September Term, 1967.)

Opinion filed December 15, 1967.

Petition for Rehearing Denied March 8, 1968.

S. G. GILBREATH, Kingsport, for appellant.

N. R. COLEMAN, JR., Greeneville, for appellee.

Mr. Justice Creson delivered the opinion of the Court.

This is an appeal from a judgment of the Chancery Court of Greene County, denying recovery under the workmen's compensation statutes. A proceeding was initially instituted by Mrs. Maggie Glover Bowman, seeking benefits by reason of the death of her husband as a result of a heart attack suffered while in the employ of Smith-Built Homes, Inc. The original petition was filed in the Circuit Court of Washington County, but was dismissed for lack of venue. The employer, Smith-Built Homes, Inc., and Hartford Accident & Indemnity Company, the employer's insurer, then instituted the instant case in the Chancery Court of Greene County.

The position of Smith-Built Homes, Inc. and Hartford Accident & Indemnity Company was that the appellant has wholly failed to show that Mr. Bowman's death arose out of his employment.

Mrs. Bowman's contention was that her husband's death was an accidental occurrence suffered in the course of and arising out of the normal and regular activities of his employment.

The trial judge filed a memorandum opinion and entered a decree, in which he concluded that the death of

Mr. Bowman did not arise out of and in the course of his employment. Mrs. Bowman has appealed to this Court and assigns three errors:

"(1) There is no material evidence to support the verdict and judgment of the Court.

(2) There is no material evidence to support a finding of fact in the verdict to the effect that the death of the deceased was caused by his violation of instructions given him by his physician at the hospital.

(3) The verdict and judgment in this case are based on erroneous conclusions of the Court drawn from facts which are undisputed."

Assignments of error (1) and (3) may be more intelligibly discussed together. Basically, they argue the fallibility of the trial court's ultimate conclusion that the employee Bowman's death did not arise out of his employment. In resolving the composite issue presented by these two assignments of error, it is necessary to bear in mind that the instant case is not one where the trial court has made a mistaken application of the law to a single justifiable conclusion of ultimate fact or multiple such conclusions. It is only misleading to confuse application of the law with conclusions of ultimate fact by the trial judge, whether founded upon controverted or uncontroverted evidentiary facts. If the ultimate conclusion of the trial judge is a factual one, then review by this Court is confined by the Workmen's Compensation statutes to the determination of whether or not such finding is supported by any material evidence. *Ward v. Commercial Ins. Co.* (1963) 213 Tenn. 100, 372 S.W.2d

292; *Travelers Ins. Co. v. Googe* (1965) 217 Tenn. 272, 397 S.W.2d 368.

The evidence presented shows that the employee Bowman, fifty-nine years of age at his death, had worked for Smith-Built Homes, Inc. for a number of years as a carpenter. Approximately seven months prior to his death, he had been promoted to foreman. There is no doubt on the record that for many months prior to his demise Mr. Bowman had a history of heart trouble.

On the day of his death, Bowman arose, as usual, and drove to a job site at nearby Limestone, Tennessee. He gave some instructions to an employee and supervised some other activities. Following the lunch-hour, he was squatting down, viewing some blueprints, when he grabbed his chest and his face became extremely flushed. Shortly thereafter, he left the job site and drove home. He entered the hospital for examination and treatment the same afternoon, but died a few hours later.

Four doctors testified at the trial, only two of whom had treated Bowman. One of the treating physicians testified that he had examined Bowman on several dates prior to his death. He had seen Bowman two months before the death and had suspected cardiovascular involvement. This doctor testified that his opinion was that Bowman's job as foreman would not be "any more stress to him that being at home where he would be upset and nervous, and things like that." The attending physician at the time of death testified on the issue of causation, as follows:

"Q. Doctor, explain, if you will, sir, to the Court in laymen's terms in so far as you can what you mean?

A. I think it is something that happened to Mr. Bowman that was not caused directly by his work, that it could have happen had he been home in bed or out fishing or anywhere else.

Q. Doctor, if you will assume the same hypothetical question that I gave you before, and add to that claimed worry and anxiety by reason of responsibility associated with the foreman's job, would that in your opinion cause, precipitate or aggravate the cardiac death?

A. I can't believe that it would.''

■ This medical testimony simply must be recognized as material evidence to support the trial judge's finding that there was no causal connection between the heart attack and any hazard of the employment.

The rationale of a recent decision of this Court, factually similar to the present case, is quite applicable. From the opinion of Mr. Justice Chattin, in *Travelers Ins. Co. v. Googe*, supra, it appears:

"(4) The phrase, 'in the course of,' refers to time and place, and 'arising out of,' to cause or origin; and an injury by accident to an employee is 'in the course of' employment if it occurred while he was performing a duty he was employed to do; and it is an injury 'arising out of' employment if caused by a hazard incident to such employment. *Shubert v. Steelman*, 214 Tenn. 102, 377 S.W.2d 940 (1964).

'(T)he mere manifestation of a heart condition without any proof of strain or overexertion at work does not show an accidental injury even though the development of the heart disease may have been

hastened by the employee's usual and ordinary work.' 99 C.J.S. Workmen's Compensation, sec. 177, page 604; *Hagewood v. E. I. DuPont,* 206 Tenn. 239, 332 S.W.2d 660 (1960).'

In Larson's Workmen's Compensation Law, Section 38.83, page 565, it is said:

'There must still be an unexpected result, and there must still be an exertion—some exertion—capable medically of causing the collapse. This can by no means be taken for granted. If heart failure overtakes the employee while waiting for a bus or an elevator, you simply have no strain at all to provide an accidental result of employment activity. The natural progress of the disease may bring it to its fatal climax during working hours, but if the employee's activity at the time involves no effort, or effort which cannot support medically a causal connection, it can be rightly said that the outcome was neither accidental nor causally related to the employment. It was not accidental simply because it did happen; it happened by the inexorable march of the disease. It would have been accidental if the employee, by a miscalculation of his own strength inadvertently hastened his own death by exertion that caused the final breakdown.' "

The appellant relies on opinions of this Court in *Ward v. Commercial Insurance Company* (1963) 213 Tenn. 100, 372 S.W.2d 292; *Huey Brothers Lumber Co. v. Kirk* (1962) 210 Tenn. 170, 357 S.W.2d 50; *Nashville Pure Milk Co. v. Rychen* (1958) 204 Tenn. 575, 322 S.W.2d 432; *Coleman v. Coker* (1959) 204 Tenn. 310, 321 S.W.2d 540; *Patterson Transfer Co. v. Lewis* (1953) 195 Tenn. 474, 260 S.W.2d 182; and *Boyd v. Young* (1951) 193 Tenn.

272, 246 S.W.2d 10. A thorough re-examination of those cases has been made. It cannot be said that they contain principles contrary to those enunciated herein. In addition, it must be noted that each of these decisions affirmed the finding of the lower court, upon lay and medical evidence supporting such finding, that the injury occurred in the course of, and arose out of, the employment. In the instant case, the trial judge, upon adequate and competent evidence, made an opposite ruling.

■ This record, as a whole, inescapably indicates that death was caued by "the inexorable march" of the heart disease. His death is not to be considered accidental, nor to arise out of his employment, merely because he suffered a preliminary seizure during working hours. We cannot at all agree with the argument that the decision of the court below is based on "erroneous conclusions" drawn from facts "which are undisputed." Here again, the record as a whole supports the ultimate factual conclusion of the trial court.

Under the scope of review of these cases fixed by the Workmen's Compensation Act itself, it is not for this Court to say that we disagree with the trial court's conclusion of ultimate fact based on material evidence. It is equally vain for this Court to speculate as to whether or not we think we might have made a better finding.

We are not to be understood as saying that the issue of whether or not the death of an employee arose out of his employment may not, in any case, be a question of law. For example, this Court has repeatedly construed "arising out of" to mean causally referrable to a hazard of the employment—clearly a conclusion of law. There are many other instances which might be alluded to.

The conclusion upon which the trial court's decree in this case is based is not, in any sense, one of law.

Nothing is to be found in the Chancellor's opinion to support the appellant's assignment of error (2). The part of the opinion and decree in question states:

"The family physician of Bowman and the doctor who attended him at the hospital during his last illness were witnesses. It appears that Bowman had had indigestion and other difficulties for over two years before his death and that he was given instructions by his personal physician which he did not follow. The same is true when he had his heart attack. He was instructed to stay in bed and rest and in spite of this he violated this instruction, got up, went to the bathroom under his own power, and the heart seizure, from which he died, followed shortly thereafter." (Tr. 64).

This part of the Chancellor's opinion was only a recitation of the employee's medical history and what occurred prior to the occasion when his physical impairment culminated in his death. These remarks were assuredly not intended as any conclusion that the employee's death resulted from his "willful misconduct or intentional self-inflicted injury" within the meaning of T.C.A. sec. 50-910.

Having thoroughly considered the briefs of counsel, the trial record and bill of exceptions, we feel constrained to the view that the assignments of error must be overruled. The judgment of the lower court is affirmed, with costs of this appeal assessed against the appellant.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and HUMPHREYS, JUSTICES, concur.

Opinion on Petition to Rehear

MR. JUSTICE CRESON.

A petition to rehear has been filed in this case. It seems to be primarily based upon the contention that this Court's original opinion has not "passed upon the real question involved" and has "apparently overlooked" one factual situation, to the effect that employee had sustained several heart attacks similar to the terminal one, in the course of employment.

No consideration of the Court's original opinion, of depth, can lead to any conclusion but that both these elements were considered, at length, by the Court in the process of determining (1) that the record contained material evidence to sustain each finding of the trial judge, both evidentiary and ultimate; and (2) that there was no error of law in the reasoning and conclusion of the court below.

The petition to rehear is denied.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and HUMPHREYS, JUSTICES, concur.